## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

EAZS HARPER,                          :
                                      :    CIVIL ACTION NO. 3:12-CV-1292
            Plaintiff                 :
                                      :
      v.                              :    (Judge Nealon)
                                      :    (Magistrate Judge Mehalchick)    **FILED**
UNITED STATES OF AMERICA, et al.,     :                                     SCRANTON
            Defendants                :
                                                                            MAY - 1 2014

                                                                    F..R _____
                                                                       DEPUTY CLERK

### MEMORANDUM

On July 5, 2012, Plaintiff, Eazs Harper, an inmate currently confined at the United States

Penitentiary in Florence, Colorado ("USP-Florence"), filed, through counsel, a civil rights

complaint pursuant to <u>Bivens</u>[1] and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, <u>et</u>

<u>seq.</u> (Doc. 1).  Named as Defendants are the United States of America, fourteen (14) current or

former employees of the United States Penitentiary in Lewisburg, Pennsylvania ("USP-

Lewisburg"), and other unknown actors on behalf of USP-Lewisburg.  (<u>Id.</u>).  Plaintiff alleged that

on or about October 5, 2010, while incarcerated at USP-Lewisburg, a Special Management Unit

("SMU") facility, he was assaulted by his cellmate, Christian Williams.  (<u>Id.</u> at pp. 16-18).

Plaintiff alleged that Defendants Bledsoe, Young, Hudson, Snider, Carrasquilla, Gemberling,

Sampson, Eger, Poeth, Webb, Edinger, Contri, and other unknown actors on behalf of USP-

Lewisburg violated his Eighth Amendment rights by failing to protect him, in that they assigned

Williams to Plaintiff's cell knowing he was hostile to Plaintiff; by failing to intervene when

Williams immediately assaulted him after being placed in the cell and released from restraints;

---

[1] <u>Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).
A <u>Bivens</u>-type action is "a judicially created remedy allowing individuals to seek damages for
unconstitutional conduct by federal officials."  <u>See</u> <u>Banks v. Roberts</u>, 251 Fed. Appx. 774, 775
n.1 (3d Cir. 2007).

and by denying him medical treatment after the assault. (Id. at pp. 18-19). Plaintiff also claimed that Defendant United States of America is liable under the FTCA for the negligent and wrongful acts of the prison officials who failed to protect him from harm. (Id. at pp. 19-20). Finally, the complaint included an injunction claim against all Defendants seeking to prevent the "unconstitutional housing, recreation and restraint patters [sic], practices and policies" at USP-Lewisburg. (Id. at pp. 20-22).

On January 23, 2013, the Court granted a motion to withdraw as attorney filed by Plaintiff's counsel. See (Doc. 5). After being given additional time to secure counsel, Plaintiff decided to proceed pro se. See (Docs. 5, 9, 12).

On July 2, 2013, Defendants filed a partial motion to dismiss and/or, in the alternative, for summary judgment. (Doc. 21). A brief in support of the motion and statement of facts were filed on July 16, 2013. (Docs. 24-25). Plaintiff was given three extensions of time to file a brief in opposition to Defendants' motion, until February 12, 2014. (Docs. 34, 37, 42). Plaintiff failed to timely file an opposition brief and, on February 20, 2014, Magistrate Judge Karoline Mehalchick issued a Report recommending that Defendants' motion be granted. (Doc. 43).

On March 12, 2014, Plaintiff filed a brief in opposition to Defendants' motion to dismiss and/or, in the alternative, for summary judgment. (Docs. 44, 47-48). He also filed objections to the Report and Recommendation ("R&R") based on the submission of his opposition brief, which he claims was timely placed in the prison's mailbox. (Docs. 45-46). Defendants filed a reply brief on March 17, 2014. (Doc. 49). On April 2, 2014, Plaintiff filed a motion seeking an extension of time to file a sur-reply to "point out the misunderstood facts." (Doc. 51). The matter is ripe for disposition and, for the reasons set forth below, the R&R will be adopted in part

2

and the case will be remanded.

## Standard of Review- R&R

When objections to a report and recommendation have been filed under 28 U.S.C. §

636(b)(1)(C), the district court must make a de novo review of those portions of the report to

which specific objections are made. Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989);

Goney v. Clark, 749 F.2d 5, 6-7 (3d Cir. 1984) ("providing a complete de novo determination

where only a general objection to the report is offered would undermine the efficiency the

magistrate system was meant to contribute to the judicial process"); Mutombo v. Carl, 2003 U.S.

Dist. LEXIS 27124 (M.D. Pa. 2003) (Kane, J.). Conversely, in the absence of objections, review

may properly be limited to ascertaining whether there is clear error that not only affects the rights

of the plaintiff, but also seriously affects the integrity, fairness, or public reputation of judicial

proceedings. Cruz v. Chater, 990 F. Supp. 375, 377 (M.D. Pa. 1998) (Vanaskie, J.); Garcia v.

I.N.S., 733 F. Supp. 1554, 1555 (M.D. Pa. 1990) (Kosik, J.) (stating "the district court need only

review the record for plain error or manifest injustice"). The district court may accept, reject, or

modify, in whole or in part, the findings and recommendations contained in the report. 28 U.S.C.

§ 636(b)(1)(C); Local Rule 72.3.

## Defendants' Motion to Dismiss and/or, in the alternative, for Summary Judgment

Based on Plaintiff's failure to timely file a brief in opposition to Defendants' motion to

dismiss and/or, in the alternative, for summary judgment, the Magistrate Judge considered the

motion unopposed. See (Doc. 43, p. 9). Magistrate Judge Mehalchick explained that pursuant to

Middle District of Pennsylvania Local Rule 7.6, any party who fails to submit a brief opposing a

motion is deemed not to oppose the motion. (Id.) (citing M.D. Pa. L.R. 7.6).

3

Since the issuance of the R&R, however, Plaintiff has filed a brief in opposition to Defendants' motion to dismiss and/or, in the alternative, for summary judgment. (Docs. 44, 48). He has also submitted a declaration stating that he timely placed his opposition brief in the prison mailbox, but that a prison error delayed its pick up until February 13, 2014, one day after it was due. See (Doc. 46). Accordingly, this Court will accept the brief in opposition as timely filed. See Houston v. Lack, 487 U.S. 266, 271-72 (1988) (commenting that if there is a delay in a pro se prisoner's filing that he suspects is attributable to the prison authorities, he is unlikely to have any means of proving it; and holding that in light of a pro se prisoner's inability to control the prison's mail service, a document is deemed filed when he delivers it to prison authorities).

As both parties have submitted evidentiary materials outside the pleadings, Defendants' motion to dismiss and/or, in the alternative, for summary judgment, will be treated solely as a motion seeking summary judgment. See Monroe v. Hogsten, 2009 U.S. Dist. LEXIS 35172, *6 (M.D. Pa. 2009). See also Latham v. United States, 306 Fed. Appx. 716, 718 (3d Cir. 2009) (When a motion to dismiss has been framed alternatively as a motion for summary judgment such as in the present case, the alternative filing "is sufficient to place the parties on notice that summary judgment might be entered."). The summary judgment standard as set forth in the R&R will be adopted. See (Doc. 43, pp. 8-9) (citing, inter alia, FED. R. CIV. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986)).

**Factual Allegations**

In the complaint, Plaintiff alleged that when Defendants Sampson and Eger arrived at his cell on October 5, 2010, and directed that he submit to restraints because he was being assigned a new cellmate, Plaintiff reminded them that he had to be separated from anyone with a gang

4

affiliation because he was cooperating with the government. (Doc. 1, p. 16). Plaintiff claimed

that after he submitted to hard restraints, Defendants Webb, Poeth, and Edinger arrived with

inmate Christian Williams, who allegedly told Defendants that he would assault Plaintiff if

forced into the same cell. (Id.). Plaintiff alleged that he told all those present, which also

included Defendants Snider, Carrasquilla, Gemberling, Contri, and other unknown actors on

behalf of USP-Lewisburg, that Williams was a hostile gang member who would assault him. (Id.

at p. 17). Defendants allegedly threatened Plaintiff with full-body restraints if he did not

cooperate. (Id.). The complaint states that Williams was placed in the cell and as soon as he had

his restraints removed, he assaulted Plaintiff. (Id.). Plaintiff claimed that Defendants stood by

and watched Williams punch, kick, and stomp him repeatedly while Plaintiff's hands were still

cuffed behind his back, but Defendants did nothing. (Id. at pp. 17-18). Despite being injured,

Plaintiff was allegedly denied medical care until the following day, and he continued to suffer

from vision and hearing loss when the complaint was filed almost two years later. (Id. at p. 18).

In their statement of material facts, Defendants state that the Bureau of Prisons ("BOP")

monitors the activities of inmates who present special management needs, such as separation,

through the Central Inmate Monitoring ("CIM") System. (Doc. 24, ¶¶ 9, 12). They contend that

on June 14, 2010, a week prior to Plaintiff's arrival at USP-Lewisburg, his security and

designation packet was reviewed. (Id. at ¶ 18). Defendants assert that the packet listed several

inmates whom Plaintiff was to be separated from, but the list did not include Christian Williams.

(Id. at ¶ 19). They allege that at an intake screening on June 21, 2010, Plaintiff identified himself

as a member of a gang, but gave no reason why he could not be placed in general population.

(Id. at ¶¶ 20-21).

According to the statement of material facts, Defendant Thomas was not assigned to USP-Lewisburg until May 2012, and therefore had no personal involvement in the complained of events of October 5, 2010. (Doc. 24, ¶ 24). Defendant Bledsoe declared that he did not make cell assignments, did not threaten Plaintiff, was not present on October 5, 2010, and was not involved in Plaintiff's medical treatment. (Id. at ¶¶ 27-32, Ex. 3). Defendant Young, whose duties included reviewing cell assignments, asserted that he did not participate in the cell moves for October 5, 2010. (Id. at ¶¶ 34-35, Ex. 4). He declared that Plaintiff never communicated any concerns for his safety and that if he had, Defendant Young would have referred the claim to Special Investigative Services ("SIS") for investigation and appropriate action. (Id. at ¶¶ 36-37, Ex. 4). He stated that he did not threaten Plaintiff, was not present on October 5, 2010, and was not involved in Plaintiff's medical treatment. (Id. at ¶¶ 38-40, Ex. 4). Defendant Hudson similarly asserted that Plaintiff never communicated any concerns for his safety and that if Plaintiff had, he would have referred the claim to SIS for investigation and appropriate action. (Id. at ¶¶ 45-46, Ex. 5). He stated that he did not threaten Plaintiff, was not present on October 5, 2010, and was not involved in Plaintiff's medical treatment. (Id. at ¶¶ 47-49, Ex. 5). Defendant Snider declared that he was not responsible for cell assignments or for providing medical care, and that he did not recall whether he responded to the incident in question. (Id. at ¶¶ 53-56, Ex. 6). Finally, the statement of material facts states that Defendant Contri did not make cell assignments, "nor was he otherwise present and involved in the events leading up to the incident of October 5, 2010 involving Harper." (Id. at ¶ 61, Ex. 7). He claimed to have no independent recollection of the incident, and that his notes do not indicate anything related to the assault or that Plaintiff expressed any safety concerns. (Id. at ¶¶ 62, 65, Ex. 7).

6

Although not mentioned in the statement of material facts, Defendant Edinger submitted a declaration stating that he was present on October 5, 2010. (Doc. 24, Ex. 8). He asserted that Plaintiff stated he could not be celled with anyone, but that neither Plaintiff nor Williams said they could not share a cell with each other, nor did either of them threaten to harm the other. (Id.). Defendant Edinger explained that in his experience inmates frequently attempt to maintain a single cell by alleging that they have to cell alone. (Id.). He declared that if Plaintiff and Williams had expressed an inability to live safely with each other, they would not have been placed in a cell together and an investigation would have been conducted to determine if there was any substantiated reason for their separation. (Id.). Notably, no affidavits were submitted by Defendants Samuels, Carrasquilla, Gemberling, Sampson, Eger, Poeth, or Webb, nor are they specifically mentioned in the statement of material facts. See (Doc. 24).

When the R&R was issued, Plaintiff had failed to file a responsive statement of material facts; therefore, the Magistrate Judge rightfully deemed Defendants' statement of material facts unopposed and admitted. (Doc. 43, p. 10). The R&R explained that Local Rule 56.1 states: "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." M.D. Pa. L.R. 56.1. Rule 56 of the Federal Rules of Civil Procedure similarly provides: "If a party ... fails to properly address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e)(2).

As previously discussed, however, Plaintiff's brief in opposition, filed March 12, 2014, will be accepted. In that brief, Plaintiff includes a "Counter Statement of Material Facts",

although it is not set forth in numbered paragraphs as required by Local Rule 56.1 <u>See</u> (Doc. 48, pp. 6-10). Defendants filed a reply to the opposition brief asking the Court to deem their statement of material facts admitted because Plaintiff failed to properly oppose Defendants' statement. <u>See</u> (Doc. 49, pp. 1-5). After review and in light of the leniency to be afforded to a <u>pro se</u> litigant's compliance with procedural rules, this Court will deny Defendants' request and will consider Plaintiff's allegations in his brief and in his declaration, attached as an exhibit thereto, as a responsive statement. <u>See</u> <u>Spencer v. Biggins</u>, 2013 U.S. Dist. LEXIS 149829, *3-4 (M.D. Pa. 2013) (Rambo, J.) (excusing the <u>pro se</u> plaintiff's failure to conform with Local Rule 56.1 because his brief in opposition to the summary judgment motion demonstrated that he disputed facts in the defendants' statement of material facts), <u>citing</u> <u>Haines v. Kerner</u>, 404 U.S. 519 (1972).

In his "Counter Statement of Material Facts", Plaintiff alleges that at his intake interview on June 21, 2010, he explained his need to be kept away from certain gangs because they had put out a hit on his life for cooperating with the government. (Doc. 44, Ex. B at ¶¶ 8-11). Because his cell assignment was predetermined, he was temporarily housed with a member of the Black-Stones gang. (<u>Id.</u> at ¶¶ 12-17). Plaintiff alleges that after later being moved down the hall, he continued to notify staff of his safety concerns because his original cellmate was showing other inmates a letter indicating that Plaintiff was setting people up at other prisons. (Doc. 44, Ex. B at ¶¶ 20-21, 22, 25, and Ex. 2-B).

Plaintiff asserts that on October 5, 2010, Defendants Webb, Poeth, Edinger, Sampson, and Eger advised that he would receive a new cellmate, but claimed not to know who it was or if he was a gang member. (Doc. 44, Ex. B at ¶ 26). He alleges that he stopped Defendant Contri,

who was doing rounds, and expressed his safety concern that the inmate may be a member of a gang. (Id. at ¶ 27). He asserts that Defendant Contri told him to put everything on paper and he would pass it on to the officials who handle such issues. (Id. at ¶¶ 28-29). Plaintiff alleges that he did as asked, handed the letter to Defendant Contri, and that Defendant Contri walked away with the letter in hand. (Id.).

Plaintiff alleges that Defendants subsequently told him to cuff up because his new cellmate was on his way. (Id. at ¶ 31). He claims that Defendants threatened him with use of force if he did not submit to restraints. (Doc. 44, p. 8). Plaintiff alleges that Defendants were aware of his need for protective custody from the gangs because of his cooperation with the government. (Doc. 44, p. 7); (Doc. 44, Ex. B at ¶¶ 37-38). He claims that when Defendants Webb, Poeth, Edinger, Carrasquilla, Gemberling, Fleming, and other unknown staff brought Williams to his cell, he advised all Defendants that Williams was a gang member hostile toward Plaintiff and that he feared for his safety. (Doc. 44, pp. 7-8); (Doc. 44, Ex. B at ¶¶ 31-32). Plaintiff asserts that Williams told Defendants Webb, Poeth, Edinger, Sampson, Eger, Carrasquilla, Gemberling, and other unknown actors on behalf of USP-Lewisburg that if forced into a cell with a "snitch" he would attack Plaintiff. (Doc. 44, p. 6). Plaintiff alleges that he, and Defendants, heard other Blood gang-member inmates telling Williams to harm Plaintiff if put in the same cell because Plaintiff was a rat-snitch. (Doc. 44, Ex. B at ¶¶ 31-34). He submits that Defendants knew of Williams' history of assaultive behavior, including Williams' assault of his new cellmate the day before, when he attacked the other inmate immediately after being uncuffed. (Id. at p. 7); (Doc. 44, Ex. B at ¶¶ 3-6). See also (Doc. 44, Ex. 1) (Declaration of inmate Dennis Wallace Mitchell stating that on October 4, 2010, over his objections to being

celled with a gang member, Williams was forced into his cell and began striking Mitchell the moment his handcuffs were removed.).

Plaintiff asserts that Defendants ignored his safety concerns and placed Williams in his cell at the direction of the Cell Assignment Committee, which consisted of Defendants Bledsoe, Young, Hudson, Snider, Thomas, and other known and unknown actors on behalf of USP-Lewisburg. (Doc. 44, p. 6). See also (Doc. 44, Ex. B). He claims that once Williams was placed in the cell, Defendants decided to remove Williams' restraints first, which gave Williams the opportunity to brutally assault Plaintiff for an extended period of time. (Doc. 44, p. 8). He claims that Defendants had an opportunity to intervene, but stood by and did nothing. (Id.); (Doc. 44, Ex. B at ¶¶ 43-44). Plaintiff alleges that Defendants denied medical staff the chance to take him to the medical center until the following day and, instead, told them "to do a quick look over" of Plaintiff in the hallway. (Doc. 44, p. 8). He claims to have continued hearing and vision loss as a result. (Id.).

## Discussion

In light of Plaintiff's objections to the R&R and brief in opposition to the summary judgment motion, filed after the R&R was issued, this Court will apply de novo review.

After review, the legal standards outlined by the Magistrate Judge regarding the required elements of a Bivens action pursuant to 28 U.S.C. § 1331, an Eighth Amendment claim for failure to protect and for failure to intervene, and an FTCA claim and the discretionary function exception thereto will be adopted. See (Doc. 43, pp. 6, 10-16).

### A.    Failure to Protect

Magistrate Judge Mehalchick found "no evidence in the record that Defendants ever

obtained any knowledge or awareness from Harper that [Williams] posed any substantial risk to his safety." (Doc. 43, p. 12). The Magistrate Judge determined that although Plaintiff allegedly told Defendants that gang members were hostile toward him and that Williams was a member of a gang, he does not claim that Williams threatened him previously or that there was a history of ill will between them. (Id.). The Magistrate Judge further concluded that Plaintiff's allegation that Williams stated he would assault Plaintiff if forced to cell together does not state an Eighth Amendment claim. (Id.), citing Shelton v. Bledsoe, 2012 U.S. Dist. LEXIS 153059 (M.D. Pa. 2012) (Nealon, J.); Davis v. Muscarella, 615 F. Supp. 2d 296 (D. Del. 2009).

Since the R&R was issued, Plaintiff has asserted, through his opposition brief, counter statement of facts, and exhibits, that he warned Defendants multiple times that Blood gang members had put out a hit on his life because he was a government informant, that Defendants knew Williams was a Blood gang member, that Defendants were aware of a letter the other inmates were passing around saying Plaintiff was a snitch, that Defendants heard other Blood gang-member inmates telling Williams to harm Plaintiff, that Williams had a history of assaultive behavior and on the day before had attacked a new cellmate as soon as he was uncuffed, and that Williams told Defendants he would assault Plaintiff if forced to share the same cell. See (Doc. 44).

In Rinaldi, the defendant argued that prior to inmate Salaam's assault on the plaintiff, there was no CIM assignment of separation regarding Salaam, and that prison officials were unaware that he posed any type of threat to the plaintiff. Rinaldi v. United States, 2010 U.S. Dist. LEXIS 66024, *12-13 (M.D. Pa. 2010) (Rambo, J.). But, the plaintiff alleged in his counter statement of material facts, that SHU officers knew before the assault that Salaam was exhibiting

violent and erratic behavior, that Salaam had recently assaulted two of his previous cellmates, and that Salaam had informed SHU officers that he did not want to be housed with any other inmates. Id. The Court denied summary judgment, concluding that "[t]hese conflicting accounts of what SHU officers knew with respect to inmate Salaam's assaultive behavior and risk of harm to Rinaldi create a genuine issue of material fact as to whether prison officials had pre-attack knowledge that inmate Salaam posed a specific threat to Rinaldi's safety." Id. at *13-14.

Similarly, this Court finds that there are genuine issues of material fact that preclude an award of summary judgment at this time. See id.; Shaw v. Burlington County Corr., 2013 U.S. Dist. LEXIS 107817, *13-14 (D.N.J. 2013) (denying summary judgment on an inmate's failure to protect claim as to two prison defendants because there was sufficient evidence that these defendants were aware of the assaultive inmate's "dangerous and violent behavior that left all inmates at risk, but took no action at all to protect inmates from harm"). Moreover, the Magistrate Judge did not have an opportunity to consider this evidence and the matter will be remanded. Because many of the allegations were not presented in the original complaint, Plaintiff will be directed to file an amended complaint so Defendants may first have an opportunity to investigate and respond to the claims.

**B.    Failure to Intervene**

The Magistrate Judge concluded that Plaintiff produced no evidence to demonstrate that Defendants had a reasonable opportunity to intervene and failed to do so. (Doc. 43, p. 14). The R&R indicated that the only record concerning when Defendants intervened is the Report of Incident, which states that the assault occurred "at approximately 11:00 a.m." (Id.), citing (Doc. 24, ¶¶ 4-5). The Magistrate Judge reasoned that because Plaintiff was taken to health services

around 11:00 a.m.[2], the evidence fails to support a deliberate indifference claim. (Doc. 43, p.

14). As such, the Report recommended that Defendants' motion for summary judgment as to the

failure to intervene claim be granted. (Id.).

Plaintiff has since submitted evidence showing that the assault was still occurring at

11:15 a.m. See (Doc. 44-2, p. 79) (Report of Vegh stating that he responded to an assistance call

for a cell fight at approximately 11:15 a.m.). See also (Doc. 44-2, p. 78) (Defendant Sampson's

report stating that he responded to a cell fight at approximately 11:00 a.m.). Furthermore,

Plaintiff alleged in the complaint and again in his declaration that he "was punched, kicked and

stomped, with his hands cuffed behind his back, by Christian Williams for an **extended period**

**of time**, was knocked to the ground, causing him serious bodily injury, while Defendants **stood**

**and did nothing**." (Doc. 1, ¶ 113) (emphasis added); (Doc. 44, Ex. B at ¶¶ 42-44).

This Court recognizes that the amount of time it takes prison officials to intervene in an

inmate-on-inmate assault may be relevant in determining deliberate indifference. See Shelton v.

Bledsoe, 2012 U.S. Dist. LEXIS 153059, *20 (M.D. Pa. 2012) (Nealon, J.) (holding that the

record fails to support an Eighth Amendment claim because the inmate-on-inmate fight, the

plaintiff's removal, and his medical assessment occurred within a matter of twelve minutes);

Bracey v. Harlow, 2013 U.S. Dist. LEXIS 136670, *33-36 (W.D. Pa. 2013) (rejecting the

plaintiff's failure to intervene claim, which faulted the defendants for waiting four minutes to

subdue the other inmate, because the incident was called out immediately, several guards

responded to secure both inmates and the weapon, within two minutes the plaintiff was removed

---

[2]Notably, Plaintiff was not taken to health services; rather, a registered nurse went to the
Special Housing Unit to do a medical evaluation. (Doc. 24-2, Ex. 1-D). See also (Doc. 44, p. 8)
(Plaintiff alleges that medical staff performed a "quick look over" of him in the hallway).

from the yard and transferred to medical triage, and within another fourteen minutes, he was transported to the medical department for sutures).  But, in light of Plaintiff's conflicting time evidence, his assertions that Defendants were aware of Williams' violent behavior when they placed him in the cell knowing Plaintiff had cooperated with the government, and his claim that Defendants knew that the same gang to which Williams was a member had put out a hit on his life, there are sufficient allegations of deliberate indifference which create a genuine issue of material fact.  See Evans v. Cameron, 442 Fed. Appx. 704, 707-08 (3d Cir. 2011) (The appellate court reversed the award of summary judgment because "the Magistrate Judge improperly resolved in the defendants' favor a factual dispute concerning 'the length of time the . . . attack on Evans lasted before the situation was brought under control'."  Specifically, Evans alleged the inmate fight lasted forty-five (45) minutes, while the defendants' evidence showed that the incident was over between five (5) and twenty-three (23) minutes later); 2010 U.S. Dist. LEXIS 101485 (W.D. Pa. 2010); Neveraz v. Vincent, 2009 U.S. Dist. LEXIS 90025, *2-3 (W.D. Pa. 2009) (holding that the plaintiff's allegations that the defendants knew of the assaultive inmate's violence-prone nature to be "sufficient to move the averments from the realm of negligence to the realm of deliberate indifference"), adopted by 2009 U.S. Dist. LEXIS 89394 (W.D. Pa. 2009).

This Court further finds it significant that in detailing the events of October 5, 2010, Defendants' statement of material facts relies heavily on the Declaration of Michael Romano, who was not present for the cell move, the ensuing attack, or Plaintiff's medical evaluation. (Doc. 24-2, Ex. 1).  Rather, Romano obtained his information from prison records, including the Report of Incident, the Clinical Encounter, and the After Action Review.  (Id.).  However, the

Report of Incident and After Action Review were both submitted by Defendant Bledsoe, who also was not present when Plaintiff and Williams were placed in the cell together, for the response to the assistance call, or for Plaintiff's medical treatment following the incident. See (Doc. 24-2, 1-C, 1-E); (Doc. 24-3, Ex. 3 at ¶ 7). Although Romano declares that an After Action Review concluded that the use of force and/or restraints on October 5, 2010, was reasonable, the cited After Action Review Report relates to the use of restraints on Williams, not Plaintiff. See (Doc. 24-2, Ex. 1 at ¶ 5, 1-E). The Clinical Encounter is limited to Plaintiff's evaluation after the incident had concluded and prepared by a registered nurse who did not witness the attack. See (Doc. 24-2, 1-D).

Furthermore, of the submitted affidavits, only Defendant Edinger stated that he was present on October 5, 2010. (Doc. 24-4, Ex. 8). See also (Doc. 24-3, Ex. 6) (Defendant Snider declared that he did "not specifically recall whether [he] responded to the incident between the Plaintiff and his cellmate on October 5, 2010"); (Doc. 24-3, Ex. 7) (Defendant Contri stated that he had "no independent recollection of this incident" and that his "notes do not indicate anything related to the assault or that Plaintiff expressed any concerns to [him]"). But, Defendant Edinger's six (6) paragraph declaration is essentially limited to stating that he did not "specifically recall that Harper stated he could not cell with anyone" and that he did "not recall either Harper or Williams stating they could not share a cell with each other or threatening to harm the other if placed in a cell together." (Doc. 24-4, Ex. 8). He offered no details about the assault or Defendants' intervention therein. (Id.). There are no affidavits in the record from Defendants Samuels, Carrasquilla, Gemberling, Eger, Sampson, Webb, or Poeth, all of whom were allegedly present for the incident. See (Doc. 24). Although there is no requirement that

they provide statements, Defendants carry the burden of showing the absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law.  Defendants' only evidence regarding the assault was provided by Michael Romano, through Defendant Bledsoe, neither of whom witnessed the incident.  Accordingly, Defendants did not meet their burden of proof.

In light of the genuine issues of material fact, created in part by Plaintiff's recent allegations, this Court will deny the summary judgment motion.  Plaintiff will be directed to file an amended complaint to include these allegations.

### C.   FTCA

The R&R explained that the alleged negligent conduct of Defendants, acting within the scope of their employment, is their purported failure to protect Plaintiff from an attack by another inmate.  See (Doc. 43, pp. 14-15).  The Magistrate Judge determined that the implementation of this duty involves an element of judgment or choice, and is of the kind that the discretionary function exception is designed to protect.  (Id. at pp. 15-16), citing Rinaldi v. United States, 460 Fed. Appx. 80, 82 (3d Cir. 2012) (stating, "courts have routinely held that federal prisoners' FTCA claims for injuries by fellow inmates are barred by the discretionary function exception").  Therefore, the Magistrate Judge concluded that Plaintiff's FTCA claim is barred by the discretionary function exception and recommended its dismissal.  (Doc. 43, p. 16).

After review, this Court finds that the Magistrate Judge was generally correct that prison officials have discretion in deciding how best to protect an inmate from an attack by a cellmate.  See Rinaldi, 460 Fed. Appx. at 82; Schingler v. United States, 2014 U.S. Dist. LEXIS 32698 (M.D. Pa. 2014) (Munley, J.) (concluding that the discretionary function exception precluded the

plaintiff's FTCA claim that prison officials knowingly placed a violent inmate in his cell, who immediately assaulted the plaintiff with a weapon after being uncuffed, and failed to intervene sooner to stop the attack). However, in light of Plaintiff's recent allegations that Defendants knew of the threat to his life made by Blood gang members aware of his cooperation with the government, and, importantly, of the declarations by Defendants Young, Hudson, and Edinger stating that if Plaintiff had communicated his safety concerns, they would have referred the matter to SIS for investigation and would not have celed Plaintiff with Williams, this Court finds that dismissal of the FTCA claim to be premature. See (Doc. 24, ¶¶ 36-37, Ex. 4) (Defendant Young declared that if Plaintiff had raised concerns for his safety, he would have referred the claim to SIS for investigation and appropriate action.); (Doc. 24, ¶¶ 45-46, Ex. 5) (Defendant Hudson asserted that if Plaintiff had communicated a safety concern, he would have referred the claim to SIS.); (Doc. 24, p. 8) (Defendant Edinger submitted a declaration stating that if Plaintiff and Williams had expressed an inability to live safely with each other, they would not have been placed in a cell together and an investigation would have been conducted.).

In Williams, the inmate alleged that he was having problems with his cellmate and asked to be transferred to another cell. Williams v. Bledsoe, 2013 U.S. Dist. LEXIS 143142, *2 (M.D. Pa. 2013) (Caputo, J.). No action was taken and later that month he was assaulted by his cellmate as he slept. Id. After a week's stay in the medical center because of his injuries, the plaintiff asked to be placed in a single cell. Id. Two months later, he was assigned a new cellmate and within weeks his new cellmate threatened him with violence. Id. The defendants were notified of the threats, but did not move him from the cell. Id. A week later, the plaintiff was assaulted by his cellmate. Id. The defendants filed a motion to dismiss and for summary

judgment as to the plaintiff's Eighth Amendment failure to protect claims and FTCA claim. Id. After review of an R&R prepared by Magistrate Judge Martin C. Carlson, the Honorable A. Richard Caputo of this Court denied the defendants' motion to allow the parties to engage in discovery. Id. at *22. With respect to the FTCA claim, the Court noted that the plaintiff claimed to have provided the defendants notice of his safety concerns, although they denied receiving such notice. Id. at *20. Moreover, the "Defendants submitted declarations indicating that had they been presented with an inmate safety concern, the concern would have been referred for investigation" and that "if they were faced with an inmate safety concern, they would have re-assigned [the plaintiff] to another cell." Id. at *20-21. The Court determined that "[t]hese declarations indicate that a mandatory prison policy may have existed regarding responses to concerns expressed by inmates about their safety, and, as a result, Defendants have not satisfied their burden of establishing the applicability of the discretionary function exception." Id. at *21. The Court, reasoning that " based on the 'confluence of the plaintiff's allegations, the defendants' representations about their lack of notice, and their unequivocal assertions about the actions they would have taken if the plaintiff had provided the notice he alleged have created questions of fact that may ultimately bear upon the plaintiff's FTCA claims in this particular case,'" allowed the plaintiff to proceed with his FTCA claim. Id. at *21-22 (quoting 2013 U.S. Dist. LEXIS 143804, *51 (M.D. Pa. 2013) (Carlson, M.J.)). Accord Rivera v. United States, 2013 U.S. Dist. LEXIS 143746, 26-27 (M.D. Pa. Oct. 2, 2013) (Kosik, J.) (finding that the defendants' declarations that if the inmate-plaintiff had raised safety concerns, they would have notified SIS to be insufficient to show a mandatory policy that imposes liability, and therefore granting summary judgment on the plaintiff's FTCA claim pursuant to the discretionary function

18

exception).

This Court will follow the approach taken in <u>Williams</u> and allow Plaintiff's FTCA claims to proceed at this time.

### D. Injunctive Relief

The Magistrate Judge reasoned that because Plaintiff has been transferred to another penal institution, his claims for injunctive relief should be dismissed as moot. (Doc. 43, pp. 16-17), <u>citing</u> <u>Fortes v. Harding</u>, 19 F. Supp. 2d 323, 326 (M.D. Pa. 1998) (Vanaskie, J.) (holding that a prisoner's "transfer to another institution moots any claims for injunctive or declaratory relief"), <u>citing</u> <u>Abdul-Akbar v. Watson</u>, 4 F.3d 195, 206-07 (3d Cir. 1993); <u>Weaver v. Wilcox</u>, 650 F.2d 22, 27 (3d Cir. 1981). Plaintiff counters that his injunctive relief claim is not moot if he could show that he is likely to be transferred back to the same conditions. (Doc. 44, p. 26).

While Plaintiff is correct, he fails to allege that it is likely he will be returned to USP-Lewisburg in the foreseeable future. <u>See</u> (Doc. 1, ¶ 132) (alleging only that Plaintiff "remains at substantial risk of continuing violations of his rights, as he remains incarcerated within the federal penal system"). There is nothing in the record to suggest that he is likely to be returned to USP-Lewisburg. <u>See</u> <u>Torres v. Clark</u>, 2010 U.S. Dist. LEXIS 107815, *8 (M.D. Pa. 2010) (Caldwell, J.) (dismissing the plaintiff's request for injunctive relief as moot because there was "nothing in the record to suggest that it is likely that he will return to SCI-Frackville in the foreseeable future"), <u>citing</u> <u>Fortes</u>, 19 F. Supp. 2d at 326. Accordingly, his injunctive relief claims will be dismissed as moot. <u>See</u> <u>Hallman v. Stitt</u>, 2012 U.S. Dist. LEXIS 57217, *2-3 (M.D. Pa. 2012) (Caldwell, J.) (stating, "[s]ince Plaintiff has been transferred from SCI-Huntingdon and his complaint fails to allege that it is likely that he will return there in the

19

foreseeable future, his request for declaratory and injunctive relief is dismissed as moot"), citing Weaver, 650 F.2d at 27.

**E.    Sovereign Immunity**

The doctrine of sovereign immunity bars a plaintiff's request for damages from state or federal officials acting in their official capacities.  See Perry v. Pa. Dep't of Corr., 441 Fed. Appx. 833, 836 n.1 (3d Cir. 2011), citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (holding that state officials acting in their official capacities cannot be sued under 42 U.S.C. § 1983 because they are not "persons", except when sued for injunctive relief).  "But claims requesting prospective injunctive relief from official-capacity defendants do not run afoul of sovereign immunity."  Perry, 441 Fed. Appx. at 836 n.1.

Defendants Samuels, Thomas, Bledsoe, Young, and Hudson argue that the official capacity claims for monetary relief against them should be dismissed because they enjoy sovereign immunity.  (Doc. 25, pp. 9-10), citing FDIC v. Meyer, 510 U.S. 471, 484-87 (1994); United States v. Mitchell, 463 U.S. 206, 212 (1983).  They recognize that Defendants Samuels and Thomas are sued only in their official capacities for the purpose of obtaining injunctive relief, but note that Defendants Bledsoe, Young, and Hudson are sued in their individual and official capacities.  (Id.).

Plaintiff responds that Defendants Samuels, Thomas, Bledsoe, Young, and Hudson are sued in their official capacities solely for injunctive relief, not for monetary relief, and that sovereign immunity does not apply.  (Doc. 44, pp. 25-26).  See also (Doc. 1, ¶¶ 4, 5) (The complaint states that Defendants Samuels and Thomas are sued in their official capacities "and joined for the purpose of permitting injunctive relief.").

As Plaintiff concedes that his official capacity claims seek only injunctive relief, sovereign immunity allows Defendants Samuels, Thomas, Bledsoe, Young, and Hudson to be sued in their official capacities. It has already been decided, however, that Plaintiff's injunctive relief claims will be dismissed as moot. Accordingly, the official capacity claims against these Defendants must also be dismissed. As such, Defendants Samuels and Thomas will be dismissed from this action entirely, but the individual capacity claims against Defendants Bledsoe, Young, and Hudson will be allowed to proceed.[3]

## F.    Personal Involvement

A "defendant in a civil rights action must have personal involvement in the alleged wrongs." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009); Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005). Rather, "each named defendant must be shown ... to have been personally involved in the events or occurrences which underlie a claim." Thomas v. Varano, 2012 U.S. Dist. LEXIS 32961, **24 (M.D. Pa. 2012) (Nealon, J.) (citing Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976)).

Defendants argue that Defendants Bledsoe, Young, Hudson, Snider, Gemberling, and Contri should be dismissed for lack of personal involvement. (Doc. 25, pp. 17-19). Plaintiff responds, inter alia, that the contradiction between Defendants' claims and his own imply "a very serious issue of material fact" and that summary judgment should be denied. (Doc. 44, pp. 23-

---

[3]As will be discussed herein, Defendants Bledsoe and Young will nevertheless be dismissed for lack of personal involvement.

25).  He also argues that Defendants' reliance on their job descriptions is insufficient to establish

their lack of personal involvement.  (Id. at pp. 24-25), citing Decree v. UPS, 2009 U.S. Dist.

LEXIS 86089, *33-37 (D.N.J. 2009).

Initially, this Court finds that Plaintiff has alleged the personal involvement of each

Defendant; therefore, Defendants must establish that there is no genuine issue as to any material

fact and that they are entitled to judgment as a matter of law.  As to Defendants Bledsoe, Young,

Hudson, and Snider, Plaintiff alleges that they were members of the Cell Assignment Committee

who decided to assign Williams to his cell on October 5, 2010, knowing of the danger he

presented.  See (Doc. 44, p. 6, and Ex. B).[4]  Next, Plaintiff alleges that when he learned he would

be receiving a new cellmate on October 5, 2010, he spoke with Defendant Contri and expressed

his safety concerns that the inmate may be a member of a gang.  (Doc. 44, Ex. B at ¶ 27).

Plaintiff asserts that Defendant Contri advised him to write everything down, which Plaintiff did,

and he would give the information to the appropriate officials.  (Id. at ¶¶ 28-29).  Finally,

---

[4]To the extent Plaintiff alleges that Defendants Bledsoe, Young, and Hudson were
responsible for creating and implementing unconstitutional policies, see (Doc. 44, p. 9, Ex. B at
¶¶ 49-53), he has not sufficiently pled their personal involvement.  See Rivera v. Rendell, 2013
U.S. Dist. LEXIS 46456, *27, 34-35 (M.D. Pa. 2013) (Caputo, J.) (holding that the plaintiff's
allegation that certain prison directors "had a duty to investigate and correct the policies and
practices that he claims directly endangered his life" did "not satisfy the requirements that these
supervising officials personally participated in the alleged wrongful activity" and dismissing the
claims against them); Keys v. Carroll, 2012 U.S. Dist. LEXIS 137930, *27-34 (M.D. Pa. 2012)
(Caputo, J.) (dismissing the claim that the supervisory defendants "'knew or were deliberately
indifferent to knowing that unconstitutional policies, practices, and customs were in place' that
condoned guards retaliating against and abusing prisoners who filed grievances" because the
plaintiff failed to demonstrate the defendants' personal involvement with the requisite factual
particularity; and concluding that the plaintiff's " broad, vague, and conclusory" allegations that
he and other inmates spoke with these defendants about the abuse and/or that these defendants
were responsible for reviewing abuse complaints were insufficient for purposes of alleging
personal involvement in constitutional misconduct); see also Knight v. Wapinsky, 2013 U.S.
Dist. LEXIS 29984, *18-21 (M.D. Pa. 2013) (Nealon, J.).

Plaintiff alleges that Defendants Contri, Snider, and Gemberling were three of several Defendants who forced Plaintiff, through threats of full-body restraints, to accept Williams into his cell on October 5, 2010. (Doc. 1, ¶¶ 106-113); (Doc. 44, pp. 6-8; Ex. B at ¶¶ 3-6, 31-34). As discussed in more detail above, Plaintiff alleges that these Defendants knew of the danger Williams posed and "stood and did nothing" when he was attacked. (Id.). The summary judgment arguments as to each Defendant will be addressed in turn.

First, Defendants assert that Warden Bledsoe had no role in inmate cell assignments or in providing inmates with medical care. (Doc. 25, p. 17). Defendant Bledsoe submitted a declaration supporting this argument, stating, inter alia, that he "had no personal involvement with assigning inmates to cells or cellmate assignments", and that he was not present on October 5, 2010, and was not involved in Plaintiff's medical treatment. (Doc. 24, ¶¶ 27-32, Ex. 3). After considering the entire record, this Court finds that the allegations against Defendant Bledsoe are based on his supervisory status and his alleged participation in the Cell Assignment Committee that assigned Williams to Plaintiff's cell. See (Doc. 1, ¶ 6); (Doc. 44, p. 6). In the absence of evidence to contradict Defendant Bledsoe's sworn affidavit stating that he was not personally involved in Plaintiff's and/or in Williams' cell assignment, or in the events of October 5, 2010, this Court will grant summary judgment in his favor. See Baker v. Allen, 2006 U.S. Dist. LEXIS 27525, *41-44 (D.N.J. 2006) (granting summary judgment in favor of the prison commissioner and prison administrator because despite their supervisory authority, they did not assign the plaintiff to his cell).

Similarly, as to Associate Warden Young, although his duties included reviewing proposed inmate cell assignments, he has submitted a sworn statement attesting that he did not

23

participate in the cell assignments for Plaintiff and/or Williams on October 5, 2010. (Doc. 25, p. 17); (Doc. 24, ¶¶ 33-35, Ex. 4). Additionally, Defendant Young declared that he was not present on October 5, 2010, and he was not involved in Plaintiff's medical treatment. (Doc. 24, ¶¶ 36-40, Ex. 4). Because Plaintiff seeks to hold Defendant Young liable based on his supervisory status and alleged participation in the Cell Assignment Committee, see (Doc. 1, ¶ 6); (Doc. 44, p. 6), to which there is no evidence he took part in, summary judgment will be granted. See Baker, 2006 U.S. Dist. LEXIS 27525 at *41-44.

Next, Defendants argue that Associate Warden Hudson should be dismissed because cell assignments are "generally" made by an inmate's unit team. (Doc. 25, p. 18); (Doc. 24, ¶¶ 41-43). Defendant Hudson filed a declaration stating that he was not present on October 5, 2010, when Plaintiff was assaulted and has never had responsibility with providing medical care to inmates. (Doc. 24, Ex. 5). However, neither the statement of material facts, nor Defendant Hudson's signed declaration actually contradict Plaintiff's allegation of personal involvement. See (Doc. 24, ¶¶ 41-43, and Ex. 5). Rather, these documents state that Defendant Hudson's "job duties did not include housing assignment decisions," and explain how cell assignments are "generally made," while acknowledging that "other staff" could make cell assignments. See id. Plaintiff is correct that Defendant Hudson's reliance on his job description, alone, is insufficient to prove that he was not personally involved in the cell assignment decisions for Plaintiff and/or Williams. See Decree, 2009 U.S. Dist. LEXIS 86089 at *33-37 (finding a genuine issue of material fact because the essential functions of the plaintiff's job was not limited to her written job description); Thomas v. Pa. Dep't of Corr., 615 F. Supp. 2d 411, 418 (W.D. Pa. 2009) (determining that whether or not the defendant's job description made him "responsible for

reviewing the decision rendered by SCI Houtzdale's [Corrections Health Care Administrator] and for insuring policies in compliance with the ADA", "does not in and of itself demonstrate that he was personally involved in or had personal knowledge of the actions complained of by plaintiff" and recommending that summary judgment be granted because the plaintiff failed to point to any evidence of personal involvement), adopted by 615 F. Supp. 2d 411, 414 (W.D. Pa. 2009).[5] Notably too, Defendant Hudson's job description lists only his "major duties and responsibilities" and is therefore not all-inclusive. See (Doc. 24, Ex. 5, Att. A). As noted above, Defendant Hudson acknowledges that "other staff" may make cell assignments, and he does not state that he did not participate in the cell assignments for Williams and/or Plaintiff for October 5, 2010. See (Doc. 24, Ex. 5). Accordingly, this Court finds that Defendant Hudson has not met his burden of proving the absence of a genuine issue of material fact, and his request for summary judgment based on his alleged lack of personal involvement will be denied.

As to Defendant Snider, Defendants submit that Deputy Captain Snider served as Acting Captain on October 5, 2010, but was not responsible for cell assignments or for providing medical care to inmates. (Doc. 24, ¶¶ 53-56, Ex. 6); (Doc. 25, p. 18). He also claims that he does "not specifically recall whether [he] responded to the incident between the Plaintiff and his cellmate on October 5, 2010," and that BOP records do not indicate his involvement. (Id.). To

---

[5]Although the Thomas court determined that an inmate-plaintiff could not establish the personal involvement of a defendant based solely on that prison official's job description, see also Cooper v. Cristini, 2012 U.S. Dist. LEXIS 132894, *14-15 (W.D. Pa. 2012) (concluding that the plaintiff could not rely merely on the defendant's job description to establish his personal involvement with an alleged constitutional deprivation), this Court finds that the reverse is also true. Namely, a defendant seeking summary judgment cannot prove lack of personal involvement based solely on his job description where the plaintiff has alleged that defendant's personal involvement.

the extent Defendant Snider relies solely on his job description to contradict Plaintiff's allegation

that he was on the Cell Assignment Committee that assigned Williams to his cell, he has failed to

meet the burden for summary judgment. See Decree, 2009 U.S. Dist. LEXIS 86089 at *33-37;

Thomas, 615 F. Supp. 2d at 418. As to Defendant Snider's reliance on his inability to recall the

events of October 5, 2010, and the absence of BOP records regarding the same, Defendants have

in fact highlighted that there is a genuine issue of material fact.[6] See, e.g. (Doc. 1, ¶¶ 105-113)

(alleging that Plaintiff advised all those present at his cell on October 5, 2010, which included

Defendant Snider, that "Williams was a member of a gang that was hostile towards him, and that

he would assault Eazs Harper if forced into the cell"). "A disagreement over the facts in

evidence is all plaintiff needs to survive summary judgment." Petrichko v. Kurtz, 117 F. Supp.

2d 467, 473 (E.D. Pa. 2000) (denying summary judgment because the "defendants rely heavily

on the differences between plaintiff's recollection of the facts and the personal recollections of

the defendants themselves, who in their affidavits each deny having any knowledge of plaintiff's

injury and the events forming the basis of this action"). Therefore, summary judgment as to

Defendant Snider based on his lack of personal involvement will be denied.

     As to Defendant Gemberling, Defendants argue in their brief that he "has no recollection

of the incident of October 5, 2010, and the absence of a memorandum by Defendant Gemberling

to the operations lieutenant, which he would have submitted had he responded, indicates that he

was not involved." (Doc. 25, p. 18) (citing SMF ¶ 92). They cite to paragraph 92 of the

statement of materials facts, however, the statement of material facts does not have a paragraph

---

[6]Notably, no Defendant has provided an affidavit contradicting Plaintiff's allegations regarding the events of October 5, 2010. Either the Defendants who were present did not make statements or could not recall the incident.

92; rather, it ends at paragraph 66. <u>See</u> (Doc. 24). There are no missing page numbers in the statement of material facts and counsel's signature is on the same page as paragraph 66, suggesting that there was no filing error to explain the discrepancy. (<u>Id.</u>). Moreover, there is no declaration on record from Defendant Gemberling. <u>See</u> (Doc. 24). In the complete absence of evidence contradicting Plaintiff's allegations of this Defendant's personal involvement, the summary judgment motion must be denied. As discussed above, Defendant Gemberling's argument that he has no recollection of the incident establishes only that there is a genuine issue of material fact. <u>See</u> <u>Petrichko</u>, 117 F. Supp. 2d at 473.

Finally, Defendants argue that Clinical Psychologist Contri did not make cell assignments, was not present or involved in the incident on October 5, 2010, has no independent recollection of the events of October 5, 2010, and that his notes do not indicate anything related to the assault or that Plaintiff expressed any safety concerns. (Doc. 24, ¶¶ 61, 62, 65). Defendant Contri submitted a signed declaration attesting to the same. (Doc. 24, Ex, 7). Plaintiff, on the other hand, alleges that shortly before Williams was brought to his cell, he told Defendant Contri that he was worried about his safety and Defendant Contri agreed to relay his concerns to the appropriate officials, and, further, that Defendant Contri was present when Williams was forced into his cell on October 5, 2010, and did nothing to prevent or stop the ensuing attack, <u>see</u> (Doc. 1, ¶¶ 106-113); (Doc. 44, pp. 6-8; Ex. B at ¶¶ 3-6, 27-29, 31-34). In light of the contradictory evidence, this Court finds that there are genuine issues of material fact precluding the entry of summary judgment. <u>See</u> <u>Petrichko</u>, 117 F. Supp. 2d at 473; <u>Harris v. Harmon</u>, 1997 U.S. Dist. LEXIS 16584 (E.D. Pa. 1997) (Following a non-jury trial, at which Defendant Mainzer testified that he could not recall the events preceding the assault on the plaintiff by his cellmate, the court

found in favor of the plaintiff and against Defendant Mainzer because he heard the cellmate's threats to harm the plaintiff but failed to accurately report the situation or take steps to protect the plaintiff from the assault.).

### G.  Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  This doctrine "provides not only a defense to liability, but "immunity from suit." Milhouse v. Gee, 2011 U.S. Dist. LEXIS 91749, *25 (M.D. Pa. 2011) (Rambo, J.) (citing Hunter v. Bryant, 502 U.S. 224, 227 (1991)).  "[I]n reviewing a motion for summary judgment on the basis of qualified immunity, normal principles of summary judgment still apply, and any disputes of fact must be resolved in favor of the plaintiff." Estate of Smith v. Marasco, 430 F.3d 140, 148 n.3 (3d Cir. 2005).

"[C]laims of qualified immunity are to be evaluated using a two-step process." Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2001) (citing Saucier v. Katz, 533 U.S. 194 (2001)). "First, the court must determine whether the facts, taken in the light most favorable to the plaintiff, show a constitutional violation." Bennett, 274 F.3d at 136.  "If the plaintiff fails to make out a constitutional violation, the qualified immunity inquiry is at an end; the officer is entitled to immunity." Id.  The "court must dispose of the claim in the defendant's favor." Milhouse, 2011 U.S. Dist. LEXIS 91749 at *25 (citing Saucier, 533 U.S. at 201).  Only once "it is determined that evidence of a constitutional violation has been adduced, [will] courts evaluating a qualified immunity claim move to the second step of the analysis to determine

whether the constitutional right was clearly established." Bennett, 274 F.3d at 136. If the right

was clearly established, "then a court must inquire as to 'whether it would be clear to a

reasonable officer that his conduct was unlawful in the situation he confronted.'" Carvalho v.

Bledsoe, 2012 U.S. Dist. LEXIS 137937, *37 (M.D. Pa. 2012) (Conaboy, J.) (quoting Saucier,

533 U.S. at 201).

Defendants argue that summary judgment should be granted because they are entitled to

qualified immunity, based solely on the assertion that they did not violate Plaintiff's

constitutional rights. (Doc. 21, pp. 26-27). Plaintiff responds that he has alleged an Eighth

Amendment violation and that Defendants were deliberately indifferent to his safety. (Doc. 44,

pp. 20-21).

"It is clearly established that prisoners have a constitutional right to be free from violence

at the hands of fellow inmates." Austin v. Hill, 2014 U.S. Dist. LEXIS 48872, *20 (E.D. Pa.

2014) (denying summary judgment of the defendants' qualified immunity defense because the

plaintiff's evidence suggested that the defendants knew another cellmate regarded the plaintiff as

a snitch and intended to stab him), citing Farmer v. Brennan, 511 U.S. 825, 833 (1994). It is also

clearly established that deliberate or reckless disregard for an inmate's right not to be assaulted is

a constitutional violation." Id. (citing Williams v. Smith, 507 F. App'x 260, 263 (2012)).

However, "[j]ust as the granting of summary judgment is inappropriate when a genuine issue

exists as to any material fact, a decision on qualified immunity will be premature when there are

unresolved disputes of historical fact relevant to the immunity analysis." Curley v. Klem, 298

F.3d 271, 278 (3d Cir. 2002). See also Carvalho v. Bledsoe, 2012 U.S. Dist. LEXIS 137937,

*36-38 (M.D. Pa. 2012) (Conaboy, J.) (deferring disposition of the qualified immunity argument

because the plaintiff was being permitted to file an amended complaint); <u>Williams v.</u>

<u>Warmerdorf</u>, 2008 U.S. Dist. LEXIS 76283, *23-24 (M.D. Pa. 2008) (Munley, J.) (denying the

motion for summary judgment on the issue of qualified immunity because "issues of fact exist as

to whether Defendants knew of and disregarded an excessive risk to the safety of Plaintiff" by his

cellmate).

As previously discussed, there are genuine issues of material fact regarding Plaintiff's

Eighth Amendment claims, and he will be directed to file an amended complaint. Accordingly, a

decision on qualified immunity is premature and the summary judgment motion on this ground

will be denied.

### H.    Amended Complaint

As discussed herein, Plaintiff has asserted new factual allegations in his brief in

opposition to the summary judgment motion and will be directed to file an amended complaint

including all such allegations so that Defendants may properly respond. Plaintiff is advised that

the "amended complaint must be complete in all respects." <u>Young v. Keohane</u>, 809 F. Supp.

1185, 1198 (M.D. Pa. 1992) (Conaboy, J.). It must be a new pleading which stands by itself

without reference to the original complaint. <u>Id.</u> The amended complaint "may not contain

conclusory allegations[; r]ather, it must establish the existence of specific actions by the

defendants which have resulted in constitutional deprivations." <u>Id.</u> (citing <u>Rizzo v. Goode</u>, 423

U.S. 362 (1976)). "The amended complaint must also be 'simple, concise, and direct' as

required by the Federal Rules of Civil Procedure." <u>Id.</u> (citing Fed. R. Civ. P. 8(e)(1)).

Furthermore, although the amended complaint may include additional factual allegations

related to the events of October 5, 2010, which were not alleged in the original complaint, the

amended complaint may not raise new claims or name new defendants. See, e.g. (Doc. 44, Ex. B at ¶ 55) (alleging retaliation for the instant action and threats by Defendant Snider and "other BOP officials" at USP- Florence).[7] Additionally, the amended complaint should be consistent with this Memorandum and not repeat any claims that are being dismissed with prejudice.

## Conclusion

Since the R&R was issued, Plaintiff has presented additional allegations in support of his Eighth Amendment claims for failure to protect and failure to intervene that have created genuine issues of material fact precluding an award of summary judgment. Additionally, Plaintiff's recent allegations that Defendants were aware of the threat to his safety and the declarations of Defendants Young, Hudson, and Edinger, stating that Plaintiff did not express any safety concerns but if he had they would have referred the matter to SIS for investigation and would not have placed Williams in his cell, have established genuine issues of material fact as to the FTCA claim and the discretionary function exception. Accordingly, Defendants' motion for summary judgment on the Eighth Amendment and FTCA claims will be denied.

As many of Plaintiff's allegations were not presented in the original complaint, Plaintiff will be directed to file an amended complaint to provide Defendants an opportunity to investigate these allegations and to respond. However, because Plaintiff is no longer incarcerated at USP-Lewisburg and there is nothing in the record to suggest that it is likely he will be returned there in the foreseeable future, his request for injunctive relief will be dismissed as moot and should not be raised again in the amended complaint. As Defendants Samuels and Thomas were sued only

---

[7]If Plaintiff wishes to pursue additional claims, he may file a new complaint in a separate civil action, subject to the applicable statutes of limitations.

in their official capacities for purposes of injunctive relief, they will be dismissed from this action entirely.

To the extent Plaintiff has sued Defendants Bledsoe, Young, and Hudson in their official capacities, these relief claims will be dismissed. As to the individual capacity claims against Defendants Bledsoe and Young, they will also be dismissed because liability cannot be based on respondeat superior, and Plaintiff has failed to present evidence of their personal involvement. Defendants' motion for summary judgment based on the lack of personal involvement of Defendants Hudson, Snider, Gemberling, and Contri, however, will be denied because they cannot satisfy their burden of proof based solely on Defendants' job descriptions or their inability to specifically recall the events of October 5, 2010. Actually, Defendants' statements that they have no independent recollection of the incident demonstrates that there is a genuine issue of material fact precluding the award of summary judgment.

In light of the presence of issues of material fact, a decision on qualified immunity is premature and the summary judgment motion on this ground will be denied.

A separate Order will be issued.

**Date:** May 1, 2014

**United States District Judge**